Hillsborough,
April 6, 1937.

### LOUISE HURLEY *v.* NASHUA HOSPITAL ASSOCIATION.

### JOSEPH HURLEY *v.* SAME.

*Daniel J. Moriarty, Timothy F. O'Connor* and *Myer Saidel (Mr. Saidel* orally), for the plaintiff.

*Demond, Woodworth, Sulloway, Piper & Jones (Mr. Piper* orally), for the defendant.

BRANCH, J. Briefly stated, the plaintiff's claim is that while a patient in the defendant's hospital in December, 1928, she was attended by a nurse who was suffering from a severe cold; that as a result, she contracted a cold which developed into pneumonia and empyema; for the consequences of this illness she seeks to recover damages in this action. Legal liability is predicated upon the alleged negligence of the defendant's agents in permitting a sick nurse to be on duty.

It clearly appeared that the defendant is a charitable corporation and important questions of law in regard to the liability of such cor-

porations for tort are presented by the plaintiff's claim as above outlined. Equally important to the decision of the present controversy are the questions in regard to the sufficiency of the evidence to sustain the verdicts presented by the motions for nonsuits and directed verdicts, and inasmuch as we regard these issues as decisive, no opinion is expressed on the other questions of law here involved.

The only testimony tending to prove that a sick nurse was permitted to attend the plaintiff, came from the plaintiff herself. She testified vaguely upon direct examination that on an unspecified day "sometime after Christmas" she was attended by a nurse, whom she could not identify by name or useful description, but who showed the characteristic symptoms of a hard cold, and that in the afternoon of the same day she experienced a tickling feeling in her throat and "began to be very sick." These general statements are insufficient to sustain the verdicts in view of the inconsistent circumstantial statements contained in her later testimony and the admitted or fully established facts appearing elsewhere in the record.

When pressed for a statement as to the date of the occurrence which she described, the plaintiff testified positively that it was not December 26, but that it might have been December 27 or 28. She further identified the date as a day when her physician, Dr. Powers, did not come to the hospital and when, as her husband told her, Dr. Powers was in Boston. By this positive and circumstantial testimony the plaintiff is bound. *Harlow* v. *Leclair*, 82 N. H. 506; *Morris* v. *Railroad*, 85 N. H. 265. The date of Dr. Powers' visit to Boston was definitely identified by him as December 27, although the plaintiff's husband testified that she first showed symptoms of a cold upon December 28 and that he made a written memorandum (since lost) of that fact.

If this testimony would justify a finding that a sick nurse was present either December 27 or 28, it would not sustain the finding that she was present at any earlier date, and the other evidence in the case demonstrates that her presence upon either of the above dates could not have caused the plaintiff's illness.

The hospital record, which was introduced by the plaintiff, and the correctness of which was not questioned by her, showed that she was coughing "during the day" of December 26, and as her physician testified, "that evidently means she had a cold." The record also showed that early in the morning of December 27, medicine for a cold was prescribed upon a "phone order Dr. Powers." This record, which bears the initials of the supervisor, indicates that one drug was

to be given every two hours commencing at 8 o'clock and another at three hour intervals commencing at 9 o'clock. Dr. Powers testified that he went to Boston on that day; that one of the supervisors called him "early in the morning" and that this order was given "some time before 9 o'clock." On his way back from Boston he called at the hospital, and the record shows that he again prescribed medicine for the cold and a sedative.

From this evidence, the only possible conclusions are that the plaintiff began to show symptoms of a cold upon December 26, which was so far developed on the morning of December 27 that a supervisor at the hospital called the attending physician and received orders for its treatment. Obviously the subsequent presence of a sick nurse on the 27th or 28th could not be the cause of a condition which had already developed, and it must, therefore, be held that there was no findable causal connection between the harm complained of and the alleged negligence of the defendant.

*Judgment for the defendant.*

All concurred.