**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**December 30, 2025**

**Christopher M. Wolpert**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

HENRY KWAME WOODE,

    Petitioner,

v.

PAMELA J. BONDI, United States
Attorney General,[*]

    Respondent.

No. 24-9568
(Petition for Review)

_____

**ORDER AND JUDGMENT**[**]
_____

Before **HARTZ**, **MORITZ**, and **ROSSMAN**, Circuit Judges.
_____

Pro se Petitioner Henry Kwame Woode, a native and citizen of Ghana,

petitions for review of the Board of Immigration Appeals' (BIA) decision affirming

the immigration judge's (IJ) final removal order denying his applications for relief

___

[*] On February 5, 2025, Pamela Bondi became Attorney General of the United States. Consequently, her name has been substituted as Respondent, per Fed. R. App. P. 43(c)(2).

[**] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

from removal.  Exercising jurisdiction under 8 U.S.C. § 1252(a)(1), we grant the petition for review in part and deny in part.

## I.  BACKGROUND

### A. Underlying Facts

Petitioner was admitted to the United States in August 2012 as an F-1 academic student to attend Morehouse College.  By October 2012, Petitioner's F-1 status was terminated because he failed to maintain student status.  Nevertheless, he remained in the United States.

In October 2017, Petitioner married a United States citizen and filed an application to adjust his status.  The United States Citizenship and Immigration Services (USCIS) denied the application because Petitioner was not legally free to marry.

In June 2020, the Department of Homeland Security (DHS) initiated removal proceedings against Petitioner by filing a Notice to Appear (NTA) in immigration court.  The NTA charged Petitioner with removability under § 1227(a)(1)(C)(i) as a noncitizen who was admitted under § 1101(a)(15)(F)(i), and who failed to maintain or comply with the conditions of the status under which he had been admitted.

In January 2021, Petitioner was arrested in Aurora, Colorado, and charged with patronizing a prostituted child and sexual exploitation of a child—possession with intent to deal in, sell, or distribute child pornography.  In July 2021, Petitioner pleaded guilty to sexual exploitation of a child—possession with intent to deal in,

sell, or distribute child pornography in violation of § 18-6-403(3)(c) of the Colorado Revised Statutes (the Conviction).  Petitioner was sentenced to ten years' probation.

## B. Agency Proceedings

In November 2023, Petitioner appeared pro se before an immigration judge and admitted the factual allegations in the NTA.  The IJ sustained the charge of removability and denied Petitioner's applications for cancellation of removal, asylum, withholding of removal, and protection under the Convention Against Torture (CAT).  In the final removal order, the IJ concluded that under the categorical approach the Conviction was an aggravated felony offense relating to child pornography as defined in 8 U.S.C. § 1101(a)(43)(I).  Such a conviction rendered Petitioner ineligible for cancellation of removal and asylum.  So, the IJ pretermitted those applications.  The IJ then determined Petitioner was not credible and did not establish that it is more likely than not that he would be targeted on account of any protected ground for purposes of withholding of removal.  The IJ also determined, for purposes of his CAT claim, Petitioner did not establish that it was more likely than not that he would be tortured by (or with the acquiescence of) the Ghanian government.  Petitioner appealed the IJ's removal order to the BIA.

A single board member of the BIA affirmed the IJ's removal order and dismissed the appeal.  The BIA rejected Petitioner's credibility determination challenges because he did not address the inconsistencies the IJ cited.  The BIA agreed that the Conviction was an aggravated felony relating to child pornography, and observed the Conviction barred Petitioner from establishing good moral character

3

for cancellation relief. The BIA also determined that, because Petitioner did not challenge the dispositive determinations related to his withholding of removal and CAT protection claims, he waived any challenges to the denial of those claims. The BIA then affirmed the IJ's denial of Petitioner's applications for cancellation of removal and asylum.

## C. Legal Standards

### i. Cancellation of removal

Under 8 U.S.C. § 1229b(b)(1), the Attorney General has discretion to cancel the removal of certain noncitizens who have been deemed removable. A noncitizen may qualify for cancellation of removal if the noncitizen:

> **(A)** has been physically present in the United States for a continuous period of not less than 10 years immediately preceding the date of such application;
>
> **(B)** has been a person of good moral character during such period;
>
> **(C)** has not been convicted of an offense under [8 U.S.C.] section 1182(a)(2), 1227(a)(2), or 1227(a)(3), subject to paragraph (5); and
>
> **(D)** establishes that removal would result in exceptional and extremely unusual hardship to the [noncitizen's] spouse, parent, or child, who is a citizen of the United States or [a noncitizen] lawfully admitted for permanent residence.

8 U.S.C. § 1229b(b)(1). Thus, under § 1229b(b)(1)(C), a noncitizen is statutorily ineligible for cancellation of removal if he has been convicted of an offense under 8 U.S.C. § 1227(a)(2), which includes "an aggravated felony." § 1227(a)(2)(iii). As defined in 8 U.S.C. § 1101(a)(43)(I), an "aggravated felony" includes child pornography offenses described in 18 U.S.C. §§ 2251, 2251A, or 2252.

### ii.    Asylum

An applicant may be eligible for asylum if the applicant is a refugee as defined in 8 U.S.C. § 1101(a)(42)(A).  8 U.S.C. § 1158(b)(1)(A).  A refugee is a person unable or unwilling to return to—and unable or unwilling to avail himself of the protection of—his home country due to "persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion[.]" § 1101(a)(42)(A); *Rodas-Orellana v. Holder*, 780 F.3d 982, 986 (10th Cir. 2015).  We refer to these five categories as "protected grounds." *Id.* (internal quotation marks omitted).  Persecution occurs when the government (or another party the government is unable or unwilling to control) inflicts suffering or harm upon one of the protected grounds.  *Ritonga v. Holder*, 633 F.3d 971, 975 (10th Cir. 2011).  The suffering or harm "must entail more than just restrictions or threats to life and liberty." *Id.* (internal quotation marks omitted).  But a refugee is not eligible for asylum if he has been convicted of an aggravated felony because that constitutes a particularly serious crime.  *See* 8 U.S.C. § 1158(b)(2)(A)(ii), (2)(B)(i).

### iii.    Withholding of removal

Like asylum, to qualify for withholding of removal, an applicant must show "a clear probability of persecution on account of a protected ground." *Rodas-Orellana*, 780 F.3d at 986-87 (internal quotation marks omitted).  Withholding of removal differs from asylum in that the burden of proof is higher. *Id.* at 986.

5

####    iv.    CAT protection

An applicant may be eligible for CAT protection if the applicant establishes that it is more likely than not that he will be tortured in the proposed country of removal, *see* 8 C.F.R. § 1208.16(c)(2), by, or with the acquiescence of, a public official, *id.* § 1208.18(a)(1).  An applicant need not show a nexus between the harm and a protected ground.  *Ritonga*, 633 F.3d at 978.

## II. DISCUSSION

### A.  Issues for Review

Petitioner essentially raises three issues for review:  (1) Whether the Conviction constitutes an aggravated felony making Petitioner statutorily ineligible for cancellation of removal and asylum; (2) Whether the agency erred by denying Petitioner's application for withholding of removal; and (3) Whether the agency erred by denying Petitioner's application for CAT protection.

### B.  Standards of review

"When a single member of the BIA issues a brief order affirming an IJ's decision, this court reviews both the decision of the BIA and any parts of the IJ's decision relied on by the BIA in reaching its conclusion."  *Dallakoti v. Holder*, 619 F.3d 1264, 1267 (10th Cir. 2010) (internal quotation marks omitted).  We review legal determinations de novo and factual determinations for substantial evidence.  *Id.* "Under the substantial evidence standard, factual findings are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary."  *Id.* (internal quotation marks omitted); *see also* 8 U.S.C. § 1252(b)(4)(B).  Ordinarily, we lack

jurisdiction to review discretionary denials of cancellation of removal applications. § 1252(a)(2)(B)(i). But when the denial for relief turns on a legal determination, we review that legal issue de novo. *Zarate-Alvarez v. Garland*, 994 F.3d 1158, 1161 (10th Cir. 2021).

## C. Cancellation of Removal and Asylum

We first consider whether the agency erred by deciding to pretermit Petitioner's applications for cancellation of removal and asylum based on its determination that his state conviction constituted an aggravated felony. We use the categorical approach to determine whether a state conviction is an aggravated felony. *See Bedolla-Zarate v. Sessions*, 892 F.3d 1137, 1139 (10th Cir. 2018). "Under the categorical approach, we consider whether the least of the acts criminalized by the state statute falls within the generic federal definition . . . ." *Id.* at 1140 (internal quotation marks omitted). Thus, our analysis compares the state statute with its federal analog to "examine whether the state statute categorically fits within the generic offense." *Id.* In our examination we consider whether there is a "realistic probability" that the statute will be applied to the least of the acts criminalized. *De Leon v. Lynch*, 808 F.3d 1224, 1230, 1232 (10th Cir. 2015) (internal quotation marks and citation omitted). Relevant here, the applicable federal definition of an aggravated felony includes "an offense described in section 2251, 2251A, or 2252 of Title 18 (relating to child pornography)[.]" 8 U.S.C. § 1101(a)(43)(I).

In Colorado, a conviction for sexual exploitation of a minor under § 18-6-403(3)(c) requires a showing that a person knowingly "[p]ossesses with the

7

intent to deal in, sell, or distribute . . . sexually exploitative material[.]"  "Sexually exploitative material" means "visual material that depicts a child engaged in, participating in, observing, or being used for explicit sexual conduct." § 18-6-403(2)(j).  "Explicit sexual conduct" includes "sexual intercourse, sexual intrusion, erotic fondling, erotic nudity, masturbation, sadomasochism, or sexual excitement."  § 18-6-403(2)(e).  "Erotic nudity" is defined as

> the display of the human male or female genitals or pubic area, the underdeveloped or developing genitals or pubic area of the human male or female child, the human breasts, or the underdeveloped or developing breast area of the human child, for the purpose of real or simulated overt sexual gratification or stimulation of one or more of the persons involved.

§ 18-6-403(2)(d).  And "erotic fondling" is defined as

> touching a person's clothed or unclothed genitals or pubic area, developing or undeveloped genitals or pubic area (if the person is a child), buttocks, breasts, or developing or undeveloped breast area (if the person is a child), for the purpose of real or simulated overt sexual gratification or stimulation of one or more of the persons involved. "Erotic fondling" shall not be construed to include physical contact, even if affectionate, which is not for the purpose of real or simulated overt sexual gratification or stimulation of one or more of the persons involved.

§ 18-6-403(2)(c).

A conviction under 18 U.S.C. § 2252(a)(4)(B) also requires a showing that a person "knowingly possess, or knowingly accesses with intent to view," a visual depiction of a minor engaged in sexually explicit conduct.  The federal statute defines "sexually explicit conduct" as "graphic sexual intercourse, including genital-genital, oral-genital, anal-genital, or oral-anal, whether between persons of the same or

8

opposite sex, or lascivious simulated sexual intercourse where the genitals, breast, or pubic area of any person is exhibited[.]"  18 U.S.C. § 2256(2)(B).

Petitioner's argument is straightforward.  He contends that 18 U.S.C. § 2252 doesn't include conduct described in the state statutes.  Specifically, he points out that 18 U.S.C. § 2256(2)(B)'s definition of "sexually explicit conduct" doesn't encompass any touching or display of a minor's breasts or buttocks for the purpose of sexual gratification.  And he cites *People v. Gagnon*, 997 P.2d 1278 (Colo. App. 1999), to show not only that is there a "realistic probability" that the statute will be applied to the least of the acts criminalized, *De Leon*, 808 F.3d at 1232, but Colorado has actually prosecuted someone for such conduct, *Gagnon*, 997 P.2d at 1280, 1282.

The government doesn't specifically address the statutory language at issue here.  Instead, it suggests that this court, like the agency below, should rely on our unpublished decision in *Serrato-Navarrete v. Holder*, 601 F. App'x 734 (10th Cir. 2015).  There, the petitioner pleaded guilty to possession of child pornography under a separate statute, § 18-6-403(3)(b.5) (sexual exploitation of a child, possession of material).  *Id.* at 734.  He argued that the BIA erred in concluding his conviction was for an aggravated felony because § 18-6-403(3)(b.5) contains broader language than its federal analog—specifically it includes the depiction of a minor "'engaged in, participating in, observing, or being used for' sexually explicit conduct, whereas § 2252(a)(4)(B) only refers to the depiction of a minor 'engaging in' sexually explicit conduct."  *Id.* at 736.  In rejecting this argument, we determined that "participating in, observing, or being used for" was not legally distinct from "engaged in," and

therefore, § 18-6-403(3)(b.5) was a categorical match to sexual exploitation of a minor under 18 U.S.C. § 2252. *Id.* at 737.

But we are not bound by our unpublished decision in *Serrato-Navarette*, which, in any event, discussed a different statutory definition than the one at issue here and focused on different statutory language. Instead, we conclude, based on our review of the state statute at issue here, § 18-6-403(2)(d), that erotic nudity includes, among other things, the display of "the human breasts, or the undeveloped or developing breast area of the human child" for the purpose of sexual gratification. And because 18 U.S.C. § 2252 doesn't include any touching or display of a minor's breasts or buttocks for the purpose of sexual gratification, § 18-6-403(3)(c) does not categorically fit within the generic offense.

Moreover, as Petitioner points out, Colorado has prosecuted someone for the broader conduct described in § 18-6-403(2)(d). In *People v. Gagnon*, the defendant was prosecuted for taking photos of a minor in sexual poses that showed a significant portion of her breasts. 997 P.2d at 1280. The Colorado Court of Appeals held that such conduct was the type of conduct described in the erotic nudity definition. *Id.* at 1282. In analyzing whether the photos qualified as erotic nudity the *Gagnon* court asked: (1) whether the image depicted a part of the body described in the statute, and (2) whether the image was "for the purpose of real or simulated overt sexual gratification or stimulation of one or more of the persons involved." *Id.* at 1281-82. The court emphasized the defendant possessed images that displayed a substantial

10

portion of the minor's breasts, and the photos clearly showed they were for the purpose of sexual gratification. *Id.* at 1282.

The government seeks to undermine Petitioner's argument, pointing out that *Gagnon* focused on the context of the images, not simply "any touching" or "any display" of a child's body part. We concur with the government that the Colorado statute does not criminalize "any touching" or "any display" of a child's body part. And we agree that context matters in analyzing statutory language. But we can't agree with the government's myopic focus on Petitioner's references in his brief to "any touching" and "any display"—especially given Petitioner's brief explicitly confines "any touching" and "any display" to the context of "real or simulated overt sexual gratification." *See* Pet'r's Opening Br. at 27-28. Indeed, the defendant in *Gagnon* was convicted for photographing a minor's breasts while she was posed in positions for the purpose of sexual gratification. 997 P.2d at 1282. Yet such conduct is not proscribed in the federal analog. *See* 18 U.S.C. §§ 2252(a)(4)(B), 2256(2)(B).

Petitioner has therefore met his burden to show there is a realistic probability that someone could be prosecuted under § 18-6-403(3)(c) for conduct that is not criminalized in § 2252(a)(4)(B). Because § 18-6-403(3)(c) is not a categorical match to its federal analog to constitute an aggravated felony, we conclude the agency erred by deciding to pretermit Petitioner's applications for cancellation of removal and asylum based on the Conviction.

## D. Withholding of Removal

Petitioner next attempts to challenge the denial of his application for withholding of removal. But as the government points out, Petitioner has clearly waived this challenge.

The IJ disposed of Petitioner's withholding of removal claim on three separate grounds: (1) Petitioner failed to testify credibly; (2) Petitioner didn't establish that it is more likely than not that he would be targeted by cartels on account of a protected ground; and (3) Petitioner's fear of future harm is speculative. Notably, Petitioner then failed to challenge any of these findings before the BIA. The BIA thus found that he had waived these issues and affirmed the denial of his withholding of removal claim. And Petitioner now fails to challenge the BIA's waiver determination before this court. Thus, as the government argues, he has waived his challenge to any of the IJ's reasons for denying his withholding claim and we affirm the denial of his petition for review as to this claim. *See Bronson v. Swensen*, 500 F.3d 1099, 1104 (10th Cir. 2007) ("[T]he omission of an issue in an opening brief generally forfeits appellate consideration of that issue.").

## E. CAT

Petitioner also challenges the agency's denial of his CAT protection claim. The IJ found that Petitioner did not show past or potential future torture by the Ghanian government—a finding dispositive to a CAT protection claim. The BIA determined Petitioner did not challenge this finding, and thus deemed it waived. Before this court, Petitioner appears to claim that he can show past and potential

12

future persecution on account of his position as a former narcotics control board officer. He also argues, for the first time, that the IJ minimized his family's past and continued persecution, dismissed serious human rights violations, and introduced assumptions about his safety. The government again points out that Petitioner failed to properly challenge the IJ's findings before the BIA, and now fails to challenge the BIA's waiver determination. The government asserts that Petitioner's other arguments challenging the IJ's findings are not properly before this court, because they are unexhausted challenges to the agency's denial of CAT protection.

We assume, without deciding, that Petitioner's arguments challenging the findings are unexhausted. *See Garcia-Carbajal v. Holder*, 625 F.3d 1233, 1237 (10th Cir. 2010) ("It is a fundamental principle of administrative law that an agency must have the opportunity to rule on a challenger's arguments before the challenger may bring those arguments to court."), *abrogated in part on other grounds by Santos-Zacaria v. Garland*, 598 U.S. 411 (2023). We also conclude Petitioner's failure to challenge the BIA's waiver determination in this court precludes appellate review. *Bronson*, 500 F.3d at 1104.

### III. CONCLUSION

We deny the petition for review as it relates to Petitioner's claims for withholding of removal and CAT protection. We grant the petition for review as it

relates to the cancellation of removal and asylum claims and remand for further

proceedings.  And we grant Petitioner's motion to proceed in forma pauperis.

Entered for the Court


Nancy L. Moritz
Circuit Judge